IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NICOLE S. MITCHELL,

Claimant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

Respondent.

No. 17 C 6241

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Claimant Nicole S. Mitchell ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 10.] The parties have filed cross-motions for summary judgment [ECF Nos. 16 and 23] pursuant to Federal Rule of Civil Procedure 56.[1] This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 16] is granted in part, and the Commissioner's Motion for Summary Judgment [ECF No. 23] is denied. This matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] The Court construes Claimant's memorandum seeking reversal of the Commissioner's decision and remand for additional proceedings as a motion for summary judgment.

# I. PROCEDURAL HISTORY

Claimant filed her claim for DIB on March 17, 2015, alleging disability beginning January 15, 2013. (R. 18.) The application was denied initially and upon reconsideration, after which Claimant requested an administrative hearing before an administrative law judge ("ALJ"). (*Id.*) On December 6, 2016, ALJ Matthew Johnson held a hearing. (R. 39–81.) Claimant, represented by counsel, appeared and testified, as did vocational expert ("VE") Mia Heikkila.[2] (R. 18, 39–80.) At the hearing, the ALJ gave Claimant another 14 days to submit additional medical records and a post-hearing brief regarding the VE. (R. 41–43, 80–81.) On February 7, 2017, Claimant submitted a post-hearing memorandum of law and objections to the VE's testimony, which included four exhibits. (R. 35, 394–436.)

On March 24, 2017, the ALJ issued an unfavorable decision denying Claimant's claim for DIB. (R. 15–38.) The opinion followed the five-step evaluation process required by Social Security regulations. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since her alleged disability onset date of January 15, 2013. (R. 20.) At step two, the ALJ found that Claimant had the following severe impairments: spine disorder, obesity, diabetes mellitus, and depression. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21.) The ALJ then determined that Claimant had the residual functional capacity ("RFC")[3] to:

---

[2] The December 6, 2016 hearing transcript refers to the VE phonetically as "Mia Kaekola." (R. 41, 70.)

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

perform light work as defined in 20 CFR 404.1567(b). She can lift/carry 20 pounds occasionally and 10 pounds frequently. She can stand for 6 hours in an 8-hour workday. She can walk for 6 hours. She can sit for 6 hours. She can push/pull as much as she can lift/carry. She cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. She [is] able to understand, carry out, remember and perform simple, routine, and repetitive tasks, not at a production rate pace but would achieve all end of day goals; involving [sic] only simple, work-related decisions with the ability to adapt only to routine work place changes. She is occasionally able to interact with supervisors and coworkers and should only have superficial non-transactional contact with the general public.

(R. 24.)

Based on this RFC, the ALJ found at step four that Claimant was unable to perform any past relevant work. (R. 29–30.) Then, relying upon the VE's testimony, the ALJ determined at step five that there were jobs that existed in significant numbers in the national economy that Claimant can perform, such as shipping and receiving weigher, plastic hospital products assembler, and small parts assembler. (R. 30–31.) Because of this step-five determination, the ALJ found that Claimant was not disabled under the Act. (R. 31.) The ALJ also overruled all the objections contained in Claimant's post-hearing memorandum. (R. 18, 31.) The Appeals Council declined to review the matter on July 5, 2017 (R. 1–5), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment

"affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

On appeal, Claimant contends that: (1) the ALJ erred in relying on the testimony of Ms. Heikkila, the VE, without first resolving inconsistencies between her testimony and the Department of Labor's Dictionary of Occupational Titles (the "DOT"); and (2) the ALJ failed to properly address Claimant's post-hearing memorandum of law and objections related to Ms. Heikkila's testimony (the "Post-Hearing Memorandum"). [ECF No. 16, at 2–15.]

## A.    The VE's Testimony

Claimant first argues that the ALJ failed to obtain a reasonable explanation regarding alleged conflicts between Ms. Heikkila's testimony and the DOT. This failure, according to Claimant, requires remand because it relates to all three jobs the ALJ relied upon to meet his step-five burden and, further, because it demonstrates the unreliability of Ms. Heikkila's testimony. The Court agrees with Claimant on these points.

At step five of the sequential evaluation process for determining disability, the Commissioner must establish "that the claimant can perform other work that exists in significant numbers in the national economy." *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008) (internal quotations omitted). As part of this inquiry, the ALJ must comply with SSR 00-4p,[4] which clarifies the standards for using evidence from VEs in disability proceedings. *See Prochaska v. Barnhart*, 454 F.3d 731, 735–36 (7th Cir. 2006) (discussing an ALJ's duties under SSR 00-4p as part of the step-five inquiry); SSR 00-4p, at *1–2. Under SSR 00-4p, an ALJ must affirmatively (1) ask if a VE's evidence "conflicts with information provided in the DOT" before using that evidence to find a claimant not disabled; and (2) "investigate and resolve any apparent conflict between the VE's testimony and the DOT" by obtaining "reasonable explanations for the conflict." *Overman*, 546 F.3d at 462–63 (internal quotations omitted); *Weatherbee v. Astrue*, 649 F.3d 565, 570 (7th Cir. 2011); SSR 00-4p, at *4. These affirmative obligations apply regardless of whether a claimant

---

[4] Social Security Rulings (SSRs) "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (internal citation and quotations omitted); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (emphasis omitted).

identifies the alleged conflict at the hearing. *See Overman*, 546 F.3d at 463 (a claimant does not forfeit an SSR 00-4p argument by failing to raise it at the administrative level).

Here, the ALJ satisfied SSR 00-4p's first requirement by asking Ms. Heikkila, after each hypothetical question posed, whether her testimony was consistent with the DOT (in each instance, Ms. Heikkila replied that it was). (R. 71–75.) Claimant, though, contends that the ALJ did not comply with SSR 00-4p's second requirement, which requires the investigation and resolution of any apparent conflicts between the VE's testimony and the DOT.

### 1. The VE's Testimony on Cross-Examination Conflicted with Her Prior Testimony Regarding Reasoning Level 2 and 3 Jobs

To determine whether the ALJ complied with SSR 00-4p's second requirement, the Court must first determine whether Ms. Heikkila's testimony conflicted with the DOT. *See Minett v. Colvin*, No. 13 CV 4717, 2015 WL 7776560, at *8 (N.D. Ill. Dec. 2, 2015) ("Because there was no conflict, . . . there was no requirement for the ALJ to ask further questions."). The alleged conflict here relates to Claimant's ability to perform tasks and make decisions. The ALJ's RFC assessment, which set forth the most Claimant can do despite her impairments, see *Craft*, 539 F.3d at 675–76, limited Claimant to understanding, carrying out, remembering, and performing "simple, routine, and repetitive tasks" at a pace where all end-of-day goals would be achieved and to "simple, work-related decisions" with the ability to adapt to routine workplace changes. (R. 24.) In his second hypothetical question, the ALJ asked whether jobs existed for a person with these restrictions (and other restrictions not at issue on appeal). (R. 71–73.) Ms. Heikkila identified three jobs: (1) shipping and receiving weigher, DOT code 222.387-074; (2) plastics hospital products assembler, DOT code 712.687-010; and (3) small parts assembler, DOT code 706.684-022. (*Id.*) During cross-examination by Claimant's attorney, Ms. Heikkila later testified that the "simple, routine, repetitive" task restriction would preclude an ability to carry out detailed oral or

written instructions. (R. 75–76.) At the hearing, Claimant's attorney did not object to or identify any inconsistencies in Ms. Heikkila's testimony. (R. 70, 75–80.) The ALJ then relied upon Ms. Heikkila's testimony to find that a significant number of shipping and receiving weigher, plastic hospital products assembler, and small parts assembler jobs existed that Claimant can perform. (R. 30–31.)

Claimant contends that Ms. Heikkila's testimony created a conflict because the "reasoning levels" of these jobs indicate that they cannot be performed by an individual with Claimant's RFC. Each occupation listed in the DOT is assigned, on a scale from 1 to 6, a "reasoning development" level (hereinafter referred to as a "Reasoning Level"), which constitutes a component of what the DOT calls the "General Educational Development" (GED) scale. *See* DOT, App'x C, § III;[5] *Tincher v. Berryhill*, No. 16 C 7305, 2018 WL 472447, at *6 (N.D. Ill. Jan. 18, 2018). Reasoning Level 2 refers to the application of "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and dealing "with problems involving a few concrete variables in or from standardized situations." DOT, App'x C, § III. Reasoning Level 3 refers to the application of "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and dealing "with problems involving several concrete variables in or from standardized situations." *Id.* Both the plastics hospital products assembler and small parts assembler positions are classified as Reasoning Level 2, whereas the shipping and receiving weigher position is classified as Reasoning Level 3. *Id.* §§ 222.387-074, 706.684-022, 712.687-010; [ECF No. 16, at 5–6.] According to Claimant, because she is limited to "simple" work and

---

[5] Citations to the DOT were accessed via the U.S. Department of Labor, Office of Administrative Law Judges, Dictionary of Occupational Titles (4th ed., rev. 1991), at https://www.oalj.dol.gov/LIBDOT.HTM (last visited Sept. 25, 2018).

decision making, she cannot perform any of these jobs, which involve carrying out detailed but uninvolved written or oral instructions (as they are all classified as Reasoning Level 2 or higher).

The assigned Reasoning Levels for these jobs, however, do not inherently conflict with the ALJ's RFC assessment. "[T]he Social Security regulations and the DOT use markedly different standards for addressing a claimant's ability to understand, remember, and concentrate on job duties." *Thompkins v. Astrue*, No. 09 C 1339, 2010 WL 5071193, at *10 (N.D. Ill. Dec. 6, 2010); *see also Givens v. Colvin*, 551 F. App'x 855, 863 (7th Cir. 2013) (explaining that a GED level, which includes a Reasoning Level, "focus[es] on the worker's educational background, not on on-the-job requirements"). As such, "no one-to-one parallel can be found between 'simple' as it [is] used under the regulations and the DOT's requirements; a task may be 'simple' under the regulations and still involve the kind of 'detailed' tasks required under Level 2 reasoning." *Thompkins*, 2010 WL 5071193, at *10.

Thus, "simple" work restrictions such as those imposed on Claimant here are not necessarily inconsistent with Reasoning Level 2 occupations. *See, e.g.*, *Minett*, 2015 WL 7776560, at *8 ("In this Circuit, many courts have found that a limitation to simple, routine tasks is not inconsistent with level two reasoning."); *Stile v. Colvin*, No. 14 C 4379, 2017 WL 2908783, at *7–8 (N.D. Ill. July 7, 2017) (following simple instructions and making simple decisions is not inconsistent with Reasoning Level 2); *Thompkins*, 2010 WL 5071193, at *5, *10–11 (finding RFC restriction to "simple, routine, repetitive tasks which require little judgment or decision-making" not inconsistent with Reasoning Level 2). Nor are Claimant's "simple" work restrictions necessarily inconsistent with Reasoning Level 3 occupations. *Huttner v. Colvin*, No. 13 CV 6606, 2015 WL 9473425, at *5 (N.D. Ill. Dec. 28, 2015) (finding that a restriction to "simple, routine, and repetitive tasks" was not inconsistent with Reasoning Level 3). Indeed, the Seventh Circuit

has twice found that similar "simple" work restrictions do not preclude someone from performing Reasoning Level 3 jobs. *See Terry v. Astrue*, 580 F.3d 471, 480 (7th Cir. 2009) (a capacity to follow simple instructions was not inconsistent with Reasoning Level 3); *Sawyer v. Colvin*, 512 F. App'x 603, 610–11 (7th Cir. 2013) (finding no conflict between a "simple tasks" restriction and Reasoning Level 3 and noting that "even workers who are markedly limited in their ability to understand, remember, and follow detailed instructions might still be able to perform jobs requiring level 3 reasoning development"). In light of these cases, as well as Claimant's failure to cite any legal authority supporting her contention, the Reasoning Levels of the identified jobs alone do not make them inconsistent with the RFC's simple work-related restrictions.

But there is an additional wrinkle: on cross-examination, Ms. Heikkila testified that the "simple, routine, repetitive" task restriction in the ALJ's hypothetical question (which mirrors that of Claimant's assessed RFC) would preclude an ability to carry out detailed oral or written instructions. (R. 75–76.) Instead of merely identifying jobs that are not necessarily inconsistent with the performance of simple tasks, Ms. Heikkila went farther, testifying that this "simple" task restriction meant that Claimant could *not* perform any jobs that required her to carry out detailed oral or written instructions.

The Court finds that this additional testimony did create a conflict with Ms. Heikkila's prior testimony regarding the availability of Reasoning Level 2 and 3 jobs. In coming to this conclusion, the Court finds instructive another district court decision, *Alvarado v. Colvin*, 147 F. Supp. 3d 297 (E.D. Pa. 2015), which addressed nearly identical VE testimony. In *Alvarado*, the court found that no inherent conflict existed between the Reasoning Level 2 jobs identified by the VE and the claimant's restriction to "routine, repetitive tasks." *Id.* at 306. On cross-examination, however, the VE affirmatively testified that the limitation to routine, repetitive tasks included in

the hypothetical questions would preclude the ability to carry out detailed instructions. *Id.* at 306–07. The *Alvarado* court found that this additional testimony conflicted with the VE's prior testimony that the plaintiff could perform Reasoning Level 2 jobs. *Id.* at 307. Similarly, although there was no inherent conflict between the Reasoning Level 2 jobs identified by Ms. Heikkila and the ALJ's simple work-related restrictions, Ms. Heikkila then affirmatively testified that these restrictions would preclude the ability to carry out detailed oral or written instructions. As was the case in *Alvarado*, this additional testimony created a conflict.

The Court acknowledges that the *Alvarado* court only addressed Reasoning Level 2 jobs, whereas Ms. Heikkila also identified a Reasoning Level 3 job (the shipping and receiving weigher position). And the Commissioner contends that even if there was a conflict between Ms. Heikkila's testimony and the DOT, Claimant has not shown that the conflict would eliminate the shipping and receiving weigher position on the same basis. [ECF No. 24, at 5.] The Court, however, disagrees. As the Commissioner asserts earlier in her brief, a Reasoning Level 3 job represents a higher level of reasoning development than a Reasoning Level 2 job. [*Id.* at 4.] Accordingly, common sense indicates that a Reasoning Level 3 job incorporates all the aspects of a Reasoning Level 2 job plus additional aspects. *See Traversa v. Berryhill*, No. 17 C 2115, 2018 WL 3352660, at *5 (N.D. Ill. July 9, 2018) (noting that "the Court is not required to leave common sense behind" in finding a conflict in the VE's testimony); *see also Diaz v. Colvin*, No. 4:16-cv-00358, 2017 WL 1078229, at *17 (M.D. Pa. Mar. 22, 2017) ("Based on the descriptions in the DOT, it appears that a reasoning level 3 required the ability to carry out detailed but uninvolved instructions."). If Claimant is precluded from performing the tasks required by a Reasoning Level 2 job, she also would be precluded from performing the tasks required by a Reasoning Level 3 job.

The Court is also not persuaded by the Commissioner's argument that Ms. Heikkila's testimony did not actually address Reasoning Level 2. [ECF No. 24, at 5.] True, Reasoning Level 2 specifies that the detailed oral or written instructions are also "uninvolved," whereas Ms. Heikkila testified about detailed oral or written instructions without addressing the underlying level of involvement. DOT, App'x C, § III; (R. 75–76.) But detailed instructions logically include both detailed and *uninvolved* instructions (as set forth in Reasoning Level 2), as well as detailed and *involved* instructions. By testifying that a hypothetical worker with Claimant's RFC would be precluded from following detailed oral or written instructions, Ms. Heikkila's testimony necessarily encompassed Reasoning Level 2.

### 2. The Conflicts in the VE's Testimony Were Apparent

Having determined that Ms. Heikkila's cross-examination testimony conflicted with her prior testimony regarding the availability of Reasoning Level 2 and 3 jobs, the Court must next determine whether the conflicts were "apparent" to the ALJ. SSR 00-4p only requires the ALJ to obtain explanations for apparent conflicts, i.e., those conflicts that are "so obvious that the ALJ should have picked up on [them] without any assistance." *Terry*, 580 F.3d at 478; *Weatherbee*, 649 F.3d at 570 (internal quotations omitted). Moreover, the Seventh Circuit has indicated that a conflict is apparent where the ALJ is aware of it before rendering his decision. *See Overman*, 546 F.3d at 463–64. Specifically, *Overman* found that even if the discrepancies at issue were not apparent "at the time of the hearing," they were apparent "at least by the time the ALJ produced his ruling," and the "ALJ's attempt to explain away the seemingly contradictory statements [in his decision was] tantamount to an acknowledgement that there were apparent discrepancies." *Id.* at 464. Thus, the ALJ's failure to resolve these inconsistencies violated SSR 00-4p. *Id.*

Here, the Court finds that the conflicts created by Ms. Heikkila's cross-examination testimony were apparent because the ALJ knew or should have known about them before he rendered his decision. Specifically, Claimant brought these conflicts to the ALJ's attention in her Post-Hearing Memorandum. (R. 394–404.) Claimant's third objection, which invoked SSR 00-4p, identified the "simple, routine, and repetitive tasks" RFC restriction and Ms. Heikkila's testimony that a "limitation to simple tasks would preclude an ability to carry out any detailed oral or written instructions." (R. 397.) Claimant further called out the Reasoning Level 2 conflict, stating that "reasoning level two jobs would exceed the RFC included in the hypothetical posed at [the] hearing based on the vocational witness' testimony" and asserting that "[n]o reasonable response was elicited to explain the unresolved conflicts between the vocational witness' testimony and the job classifications." (*Id.*) And although Claimant's objection did not explicitly assert a conflict with the Reasoning Level 3 job, this conflict should have been obvious to the ALJ based on Claimant's identification of the Reasoning Level 2 conflict; as discussed above, one who does not have the abilities of a Reasoning Level 2 job does not have the abilities for a job with a higher reasoning level. *Cf. Turner v. Colvin*, No. 14 CV 02237, 2016 WL 3088134, at *11 (N.D. Ill. June 2, 2016) (finding that the ALJ violated SSR 00-4p by failing to resolve a conflict that should have become apparent to the ALJ by reviewing the DOT before issuing her decision); *see also Diaz*, 2017 WL 1078229, at *17 ("Based on the descriptions in the DOT, it appears that a reasoning level 3 required the ability to carry out detailed but uninvolved instructions.").

Moreover, the ALJ did not issue his decision until March 24, 2017. (R. 31.) This gave him more than six weeks to consider the objections and conflicts raised in Claimant's Post-Hearing Memorandum, which was submitted on February 7, 2017. (R. 35, 394.) And there really is no doubt that the ALJ was aware of these objections and conflicts, as his decision cited the entirety

of the Post-Hearing Memorandum and specifically made a point to discuss and overrule Claimant's objections. (R. 18, 31.) Nor does the Commissioner dispute that the alleged conflicts were apparent or otherwise known to the ALJ. [*See* ECF No. 24, at 1–6.] To the contrary, the Commissioner appears to concede that the ALJ knew about these conflicts: "[t]he ALJ addressed and rejected plaintiff's argument that there was a conflict between the reasoning development levels in the DOT and the VE's testimony that plaintiff could perform job[s] given her RFC." [*Id.* at 6.] Accordingly, the Court finds that the conflicts in Ms. Heikkila's testimony were apparent.

### 3. The ALJ Did Not Properly Resolve the Apparent Conflicts

The last step in an SSR 00-4p inquiry is to determine whether the ALJ resolved and obtained a reasonable explanation for the apparent conflicts. *See Weatherbee*, 649 F.3d at 570. Here, the ALJ did not. He did not, for example, ask Ms. Heikkila to clarify the inconsistencies between her testimony that Claimant could perform Reasoning Level 2 and 3 jobs and her later testimony that a hypothetical person with Claimant's restriction to simple, routine, and repetitive tasks could not perform jobs that require the ability to carry out detailed oral or written instructions. (R. 70–80.) Nor did the ALJ reasonably explain or resolve these inconsistencies in his decision. (*See* R. 18, 31.)

On this point, the Commissioner appears to contend that the ALJ was permitted to find Ms. Heikkila's testimony persuasive, despite any conflicts, because of "her 'experience, education and training.'" [ECF No. 24, at 6 (quoting R. 18).] To be sure, an ALJ may accept VE testimony "that conflicts with the DOT when, for example, the VE's experience and knowledge in a given situation exceeds that of the DOT's authors or when the VE's contrary testimony is based on information in other reliable publications." *Overman*, 546 F.3d at 464 (internal citations and quotations omitted). But neither circumstance was present here. To the contrary, Ms. Heikkila repeatedly

testified that her opinions were *consistent* with the DOT. (R. 72–73, 75.) Thus, any suggestion by the Commissioner that Ms. Heikkila's "experience, education and training" could satisfactorily "explain away the conflicts" at issue is not well taken. *See Overman*, 546 F.3d at 464 (rejecting a similar argument).

By failing to investigate and resolve apparent conflicts raised by Ms. Heikkila's testimony at the hearing, the ALJ failed to comply with his affirmative duties under SSR 00-4p. Accordingly, remand is required. *See, e.g.*, *Prochaska*, 454 F.3d at 733, 736 (failure to comply with SSR 00-4p required remand).

### 4. The VE's Testimony was Unreliable

In addition, even if the ALJ had not violated SSR 00-4p, the Court must still determine whether Ms. Heikkila's testimony was reliable. *See Overman*, 546 F.3d at 463–64 (indicating that whether the ALJ violated SSR 00-4p is a question separate from whether the ALJ's step-five ruling is premised on "flawed" testimony). An ALJ may satisfy his step-five burden by relying on testimony from a VE, but only if it is reliable. *Id.* at 464. "A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008).

Here, for the reasons already discussed, the Court finds that the unresolved conflicts in Ms. Heikkila's testimony rendered it unreliable, and the ALJ's reliance on this testimony means that his step-five conclusion was not supported by substantial evidence. *See Traversa*, 2018 WL 3352660, at *4–5 (the ALJ's failure to address or resolve conflicts in the VE's testimony and her dependence on this testimony meant that the step five conclusion was not supported by substantial evidence). As such, remand is required on this ground as well so that the ALJ can resolve these conflicts. *See id.*; *Britton*, 521 F.3d at 803.

**5. Summary and Instructions for Remand**

In sum, the ALJ violated SSR 00-4p and relied on unreliable VE testimony in rendering his decision. Ultimately, it may be that a VE reasonably can explain how an individual who is precluded from carrying out detailed oral or written instructions can work in a Reasoning Level 2 or 3 job, including as a shipping and receiving weigher, plastics hospital products assembler, and a small parts assembler. But such an explanation is missing from the current record. On remand, the ALJ shall obtain such an explanation and take any other measures necessary to satisfy his affirmative obligations under SSR 00-4p and to ensure that the VE's testimony is reliable.

**B. Claimant's Post-Hearing Memorandum**

Claimant next contends that the ALJ failed to properly address her Post-Hearing Memorandum. Specifically, Claimant argues that the ALJ reversibly erred by (1) not properly considering her post-hearing objections regarding the reasoning levels testified to by Ms. Heikkila; and (2) failing to acknowledge an opinion from Paula F. Santagati, a vocational rehabilitation counselor, which Claimant submitted with her Post-Hearing Memorandum (the "Santagati Opinion"). The Court disagrees and finds that the ALJ did not commit reversible error with respect to his treatment of Claimant's Post-Hearing Memorandum.

**1. The Court Did Not Reversibly Err in Addressing Claimant's Post-Hearing Objections**

By finding that the ALJ reversibly erred in failing to obtain a reasonable explanation for the conflicts in Ms. Heikkila's testimony, the Court has already addressed, in large part, Claimant's first argument with respect to her Post-Hearing Memorandum. Even so, Claimant contends that the ALJ's failure to properly respond to and rule upon the objections in her Post-Hearing Memorandum, including those related to the conflicts in Ms. Heikkila's testimony, constituted a "stand-alone reversible error." [ECF No. 16, at 7-8, 11–15.] Accordingly, the Court's analysis of

this argument will focus on the extent to which the ALJ was obligated to address and respond to Claimant's post-hearing objections.

The Court finds that the ALJ had no such obligation, as none of Claimant's post-hearing objections were first raised at the hearing. A claimant generally forfeits any objections that are, as here, only raised for the first time after an administrative hearing. *See, e.g.*, *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016) (a claimant's failure to object to VE testimony at the hearing forfeits related arguments); *Owens v. Berryhill*, No. 17 CV 4824, 2018 WL 3303274, at *1–3 (N.D. Ill. July 5, 2018) (finding that an objection first raised in a post-hearing brief was forfeited). Thus, because the ALJ was never required to address Claimant's post-hearing objections in the first place—as they had been forfeited—his treatment of these objections cannot form the basis of reversible error.[6] *See also Giotta v. Astrue*, No. 10-cv-1828, 2011 WL 2200027, at *8 (N.D. Ill. June 3, 2011) (the ALJ did not err in failing to respond to a post-hearing letter raising issues that were not addressed at the hearing).

In coming to this conclusion, the Court acknowledges that, as Claimant points out, the ALJ gave her attorney the opportunity to submit "a post-trial brief with respect to the Vocational Expert." (R. 80–81.) As such, the ALJ contemplated that Claimant would submit some sort of additional material after the hearing (although it is unclear what the ALJ expected the brief to contain). But the ALJ also required Claimant to submit her brief within 14 days of the hearing, which was held on December 6, 2016. (R. 39, 80.) Claimant did not do so; instead, she submitted her Post-Hearing Memorandum on February 7, 2017—*two months* after the hearing. (R. 35, 394.) Even if the ALJ had somehow obligated himself to respond to post-hearing objections raised

---

[6] To be clear, this analysis does not address the ALJ's obligations to comply with SSR 00-4p or to support his decision with reliable VE testimony, which, as already discussed, are not necessarily impacted by a claimant's failure to object at the hearing.

within the imposed 14-day period, he certainly had no obligation to respond to objections raised six weeks after this deadline had passed.

Claimant's other arguments are also not persuasive. First, the Social Security Administration's internal guidelines, known as HALLEX, did not require the ALJ to resolve Claimant's post-hearing objections. As explained by other courts in this District, which have rejected the same argument made by the same attorneys, HALLEX does not compel an ALJ to rule on VE-related objections that are lodged only after the hearing, as was the case here. *Owens*, 2018 WL 3303274, at *2; *Horner v. Berryhill*, No. 17 C 4823, 2018 WL 1394038, at *2 (N.D. Ill. Mar. 20, 2018).[7] Second, even if her attorney posed questions that formed the basis of the post-hearing objections, as Claimant contends, she fails to cite any legal authority that equates such questioning with an objection to testimony. Third, while Claimant may believe it is "patently unreasonable" to require her to raise objections to a VE's testimony during the hearing [ECF No. 16, at 13], the Seventh Circuit disagrees. *See, e.g.*, *Brown*, 845 F.3d at 254 (a claimant's failure to object to VE testimony at the hearing forfeits related arguments); *Liskowitz*, 559 F.3d at 744 (same). Under Seventh Circuit precedent, it is "clear that the time for a claimant to question a VE about the underpinnings of her opinion is during the hearing." *Owens*, 2018 WL 3303274, at *3 (rejecting a similar argument). Simply put, Claimant was required to raise her objections at the hearing, notwithstanding any alleged impracticalities in doing so. *See Everhart v. Berryhill*, No. 4:17-cv-00076-TAB-SEB, 2018 WL 446323, at *2 (S.D. Ind. Jan. 17, 2018).

In any event, the ALJ did address Claimant's post-hearing objections. The ALJ overruled all of Claimant's post-hearing objections on three bases: (1) Claimant's failure to raise these

---

[7] Moreover, "because the instructions in the HALLEX have not been formally promulgated as rules or regulations, they are not legally enforceable by claimants against the Commissioner." *Jessee v. Berryhill*, No. 1:16-cv-3188-SEB-MJD, 2018 WL 797393, at *4 (S.D. Ind. Feb. 9, 2018) (citing cases). As such, "an ALJ's failure to follow instructions in the HALLEX does not show reversible error." *Id.*

objections at the hearing; (2) the general nature of many of the objections; and (3) the consistency of Ms. Heikkila's testimony with the DOT "and her experience, education and training." (R. 18.) The ALJ also rejected Claimant's objections because he believed that Ms. Heikkila identified her underlying sources and methodology in a manner sufficient to find her testimony acceptable. (R. 31.) Thus, the ALJ resolved Claimant's post-hearing objections. And although Claimant may not agree with this resolution, she does not cite any legal authority demonstrating that it was legally insufficient.

Except for the conflicts in Ms. Heikkila's testimony, which the Court has addressed elsewhere, the ALJ had no obligation to address objections raised for the first time by Claimant after the administrative hearing. Moreover, the ALJ did consider and resolve Claimant's post-hearing objections. No reversible error exists on this basis.

### 2. The Court Did Not Reversibly Err with Respect to the Santagati Opinion

Claimant next contends that the ALJ reversibly erred because he failed to acknowledge the Santagati Opinion, which was attached as an exhibit to Claimant's Post-Hearing Memorandum. (*See* R. 419–21.) Titled "Vocational Opinion Regarding the Limitation of Occasional Interaction with Coworkers and Supervisors," the Santagati Opinion discusses the training programs of entry level jobs at six companies, with the identified jobs relating to cashiering, dishwashing, factory work, cleaning services, and assisted living facilities. (R. 420–21.) The Santagati Opinion ultimately concludes that because "the training and probationary period for any job would require more than occasional interaction with co-workers and supervisors," limiting an individual to occasional coworker and supervisor interaction precludes *all* work. (R. 421.) Claimant contends that the Santagati Opinion constitutes rebuttal evidence that contradicts the testimony of Ms. Heikkila.

18

At the outset, the Santagati Opinion is not "rebuttal" evidence by Claimant's own definition, i.e., evidence that "*cannot* be obtained until the contrary evidence is known." [ECF No. 25, at 3 (emphasis added).] The Santagati Opinion is dated October 1, 2015. (R. 421.) Thus, it was "obtained" more than a year before the contrary evidence (Ms. Heikkila's testimony, offered on December 6, 2016) even came into existence. Indeed, the Santagati Opinion does not even discuss any of the contrary evidence, such as the shipping and receiving weigher, plastic hospital products assembler, and small parts assembler jobs identified by Ms. Heikkila. (R. 420–21.) Nor does it make any reference to Ms. Heikkila's testimony or, for that matter, to Claimant. (*Id.*)

Instead, the Santagati Opinion appears to be a "form" opinion used by disability claimants whenever a restriction to occasional coworker or supervisor interaction comes into play. *See Treadaway v. Berryhill*, No. 4:17-cv-1093, 2018 WL 3862106, at *5 (S.D. Tex. Aug. 13, 2018). Claimants in several cases have offered the same or similarly generic opinions from Ms. Santagati. *See, e.g., id.*; *Collins v. Berryhill*, No. 3:17cv633 (MHL), 2018 WL 4232888, at *13 (E.D. Va. Aug. 20, 2018) (addressing the same Santagati Opinion and noting "the widespread use of the very same Report by plaintiffs in other courts"); *Looney v. Berryhill*, No. 3:17cv450 (DJN), 2018 WL 3826778, at *11–12 (E.D. Va. Aug. 10, 2018) (addressing the same Santagati Opinion and noting that "[s]everal courts have received reports from Santagati containing identical testimony regarding work-preclusive social limitations"); *Kidd v. Berryhill*, No. 5:17-CV-420-REW, 2018 WL 3040894, at *4 (E.D. Ky. June 19, 2018); *Lara v. Berryhill*, No. B-17-77, 2017 WL 7790109, at *7 (S.D. Tex. Dec. 4, 2017); *Reeves v. Berryhill*, No. 3:16-CV-2510, 2017 WL 3433706, at *11 (M.D. Pa. Aug. 10, 2017). Like Claimant's use of the Santagati Opinion here, these claimants waited until after the administrative hearing to submit Ms. Santagati's opinion and then, on appeal to the federal district court, argued that the ALJ's treatment of the opinion required remand.

*Treadaway*, 2018 WL 3862106, at *5; *Looney*, 2018 WL 3826778, at *11–12; *Kidd*, 2018 WL 3040894, at *3–4; *Lara*, 2017 WL 7790109, at *7, *9–10; *Reeves*, 2017 WL 3433706, at *11; *see also Collins*, 2018 WL 4232888, at *12–14 (arguing that the Appeals Council erred in rejecting the Santagati Opinion). While the Court does not know whether all the claimants in the cases identified by the Court were represented by the same representatives at the administrative level, they were all represented at the district court level by Claimant's lead counsel here.

This pattern suggests a strategy by disability claimant representatives to forego cross-examining a VE about the issues raised by the Santagati Opinion, even though the opinion is in hand (or at least known) *before* the hearing. *See, e.g.*, *Kidd*, 2018 WL 3040894, at *4 (noting that because the Santagati report existed at the time of the hearing, the claimant could have cross-examined the VE on the issues raised on appeal, although he did not). The representatives then submit the Santagati Opinion after the hearing, and if the ALJ rules unfavorably despite the submission, the Santagati Opinion serves as a potential basis for remand on appeal. If such a strategy is in fact being implemented, it abuses the process by which claimants can properly submit post-hearing evidence for consideration in social security disability cases.

The Court cannot say for sure whether this is what occurred in this instance. But it notes that prior to the December 6, 2016 hearing here, Ms. Santagati was an employee of Citizens Disability, LLC, which represented Claimant at this hearing and afterwards. (R. 41, 173–74, 386, 393–94); *Rosado v. Berryhill*, No. 4:16-cv-00173, 2018 WL 816578, at *2 (E.D. Va. Jan. 22, 2018). In March 2016, Ms. Santagati testified on behalf of the claimant in *Rosado*, who was also represented by Citizens Disability, LLC, and she gave the same opinion reflected by the Santagati Opinion here: that a limitation to occasional interaction with coworkers and supervisors would preclude all work. (R. 421); *Rosado*, 2018 WL 816578, at *2, *6. Thus, even if Claimant's

20

representatives from Citizens Disability, LLC were not aware of the Santagati Opinion in October 2015 (when Ms. Santagati offered it), they were almost certainly aware of it well before they attended the December 6, 2016 hearing or submitted the February 7, 2017 Post-Hearing Memorandum. And while Claimant's representative may not have known beforehand precisely what questions the VE would be asked at the hearing, restrictions on coworker and supervisor interaction are commonly incorporated into hypothetical questions. *See, e.g.*, *Varga v. Colvin*, 794 F.3d 809, 812 (7th Cir. 2015); *Gully v. Colvin*, 593 F. App'x 558, 562 (7th Cir. 2014); *Givens*, 551 F. App'x at 859; *Thomas v. Colvin*, 534 F. App'x 546, 548–49 (7th Cir. 2013). Claimant's representative should have expected that the ALJ's questioning might touch upon these restrictions and, as necessary, been prepared to question Ms. Heikkila based on the already-existing Santagati Opinion.

Against this backdrop, the Court turns to whether the ALJ failed to properly address the Santagati Opinion. "[T]he submission and consideration of post-hearing evidence are common in social security disability cases," especially evidence intended to rebut VE testimony that could not have been anticipated prior to the hearing. *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010). Nonetheless, the ALJ has broad discretion in considering such evidence. *Dornseif v. Astrue*, No. 11 C 4335, 2012 WL 1441770, at *11 (N.D. Ill. Apr. 26, 2012) ("[A]n ALJ has broad discretion to admit records into evidence after the close of the hearing[.]"); *Willis v. Comm'r of Soc. Sec.*, No. 10-CV-310-PMF, 2011 WL 4037032, at *4 (S.D. Ill. Sept. 12, 2011) ("When records are submitted after the close of the hearing, the ALJ has discretion to consider them or reject them."). An ALJ is "not required to consider materials submitted after the record [is] closed," *Willis*, 2011 WL 4037032, at *4, nor is an ALJ "obliged to reopen the record." *Donahue v. Barnhart*, 279 F.3d 441, 447 (7th Cir. 2002).

Here, the Court finds that the ALJ had no obligation to consider the Santagati Opinion. As discussed above, the Santagati Opinion is not the type of post-hearing "rebuttal" evidence that could not have been relied upon or otherwise employed at the hearing. Moreover, Claimant had 14 days after the December 6, 2016 hearing to submit a post-trial brief and evidence regarding Ms. Heikkila's testimony. (R. 39, 80.) After that, the record presumably closed. In fact, Claimant's December 21, 2016 request for the record "to be held open for another 21 days in order to submit additional medical records" indicates that Claimant believed that the record did in fact close after the ALJ's 14-day deadline. (R. 393.) Regardless of whether this requested extension also applied to the submission of purported rebuttal evidence, Claimant had more than enough time to submit the Santagati Opinion before the record closed. Instead, Claimant waited until February 7, 2017 to submit the Santagati Opinion. (R. 394.) Especially in light of Claimant's two-month delay in submitting evidence that existed when the ALJ imposed his initial 14-day deadline, the ALJ had no obligation to reopen the record to consider the opinion. *See Donahue*, 279 F.3d at 447; *Willis*, 2011 WL 4037032, at \*4; *see also McClesky*, 606 F.3d at 354 ("[I]t is proper for the claimant to submit further evidence after the hearing, *provided this is done promptly*.") (emphasis added).

Furthermore, a common sense reading of the ALJ's decision indicates that he did review and consider the Santagati Opinion, even though he was under no obligation to do so. *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (reviewing courts give ALJ decisions commonsensical readings). The Santagati Opinion, which was Exhibit B to the Post-Hearing Memorandum, related to Claimant's fourth objection to Ms. Heikkila's testimony. (R. 397–99, 419–21.) In two instances in his decision, the ALJ noted Claimant's post-hearing objections and explained why he was overruling them. (R. 18, 31.) There is no reason to think that the ALJ did not review and assess the evidence, including the Santagati Opinion, that accompanied each of the objections that he

overruled. In addition, the List of Exhibits attached to the ALJ's decision identified the entire Post-Hearing Memorandum, which included the Santagati Opinion, as being moved into evidence as Exhibit 25E. (R. 35.) Lastly, in discussing Claimant's post-hearing brief and objections, the ALJ cited all 43 pages of Exhibit 25E, further indicating his review and consideration of the Santagati Opinion. (R. 31.)

As with Claimant's post-hearing objections, the ALJ had no obligation to address the Santagati Opinion, and, in any event, he did consider the Santagati Opinion. No reversible error exists on this basis either.

### 3. Summary and Instructions for Remand

In sum, except for his failure to obtain a reasonable explanation for the conflicts in Ms. Heikkila's testimony, the ALJ did not err in his treatment of Claimant's Post-Hearing Memorandum. Nonetheless, because remand is being ordered on other grounds, the ALJ may reconsider any of the objections or evidence submitted by Claimant in connection with her Post-Hearing Memorandum. If the ALJ is inclined to consider additional objections or evidence after the hearing on remand, the ALJ should explicitly make this known at the hearing. The ALJ should also inform Claimant as to the deadline, if any is warranted, for submitting any post-hearing objections or evidence.

## IV. CONCLUSION

For the reasons discussed in the Court's Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 16] is granted in part, and the Commissioner's Motion for Summary Judgment [ECF No. 23] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated:    February 4, 2018